

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Jonathan O. Chenoweth
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Brandon T. Black, <br> *Appellant-Petitioner*, <br><br> v. <br><br> State of Indiana, <br> *Appellee-Respondent*. | May 12, 2016 <br><br> Court of Appeals Case No. <br> 02A03-1511-PC-1875 <br><br> Appeal from the Allen Superior Court <br><br> The Honorable John F. Surbeck, Jr., Judge <br><br> Trial Court Cause No. <br> 02D06-1201-PC-10 |

**Brown, Judge.**

Brandon T. Black appeals the denial of his petition for post-conviction relief. Black raises two issues which we consolidate and restate as whether the post-conviction court erred in denying his petition for relief. We affirm.

## Facts and Procedural History

In 2010, the State charged Black with battery and neglect of a dependent as class A felonies.[1] On November 22, 2010, a public defender entered an appearance on behalf of Black. On November 23, 2010, the court held a hearing, and Black orally moved to proceed *pro se*. The court granted the motion with the public defender appointed as standby counsel.

At some point while Black was proceeding *pro se*, the State made a plea offer in which he could plead guilty to battery and receive an executed sentence of thirty-five years and the State would dismiss the neglect charge, and Black rejected the offer. Black later waived his right to self-representation, and the public defender was appointed to represent him.

On May 2, 2011, the court held a change of plea hearing. Black indicated a desire to plead guilty to neglect of a dependent as a class A felony. The plea agreement provided that the State agreed to dismiss the charge of battery as a class A felony.[2] The court informed Black of his rights and stated: "This is a Class A Felony; carries a range of sentence from twenty (20) to fifty (50) years,

---

[1] The record does not contain a copy of the charging information.

[2] The record does not contain a copy of the plea agreement.

the advisory sentence is thirty (30) years. Do you understand the penalties involved here?" Guilty Plea Transcript at 7. Black responded: "Yes sir." *Id.* Upon the court's questioning, Black indicated that he read and discussed the plea agreement with his attorney before signing it and that he was satisfied with his attorney.

[5] Black testified that on September 13, 2010, he failed to watch K.T., an eleven-month-old boy, that the cause of K.T.'s death was a skull fracture and bleeding to the brain, and that K.T. also suffered other injuries including to his abdomen and chest. Upon questioning by his counsel, Black indicated that in his view K.T. suffered the injuries because he was not watching him and K.T. fell down a large stairway. He also testified that he was aware that K.T. sustained a broken arm approximately a month earlier while he was engaged in some sort of activity with another child. The prosecutor stated that the State was prepared for trial for both the battery and the neglect charge. The trial court took the matter under advisement and later accepted the plea agreement.

[6] On June 3, 2011, the court held a sentencing hearing. Dr. Pramond K. Carpenter, a forensic pathologist, testified that he performed an autopsy on K.T. in September 2010. Following Dr. Carpenter's identification of an exhibit as containing photographic evidence that was collected during the autopsy of K.T., Black's counsel objected on the basis that the nature and extent of the injuries sustained by the infant were not relevant because Black pled guilty to neglect and that what Dr. Carpenter's testimony "will go to is the fact that in this witness's opinion this was perhaps an intentional act" to which Black had

not pled guilty and that the court had dismissed the intentional act. Sentencing Transcript at 9. The court stated that it believed "[w]hether or not Mr. Black is directly responsible for the injuries sustained, I think proof of the situation into which he was placed causing his death is relevant and therefore we'll overrule the objection." *Id.* at 11.

[7] Dr. Carpenter testified that K.T. suffered multiple circular bruises in the chest and similar circular contusions or bruises on the lower part of the abdomen consistent with being caused by either the tips of the fingers or knuckles. Dr. Carpenter also testified that there was a healing fracture which had been repaired on the right arm several weeks earlier and healed scratch marks on the left arm. He testified that the most severe injury and the cause of death was a skull fracture. He also testified that the head trauma and chest and abdomen injuries would not have been caused by a fall down stairs.

[8] The court recognized Black's guilty plea and difficult childhood as mitigating circumstances, but found that the aggravating circumstances, which included Black's criminal history and the nature of the offense, substantially outweighed the mitigating circumstances. The court sentenced Black to fifty years with ten years suspended.

[9] Black filed a *pro se* petition for post-conviction relief on January 23, 2012, and an amended petition by counsel on July 31, 2014. Black alleged that he pled guilty involuntarily and that he was denied the effective assistance of trial counsel. Black asserted that, when he pleaded guilty, he thought that he could

receive a sentence of one hundred years were he to proceed to trial and be found guilty as charged while in fact he could receive a sentence of only fifty-three years. On August 28, 2014, the State filed an answer in which it in part admitted that Black's maximum sentencing exposure was fifty-three years.

[10] On March 13, 2015, the post-conviction court held an evidentiary hearing. Black's trial counsel testified that he met with Black several times and that they had "a lot of conversations." Post-Conviction Transcript at 7. When asked if he explained how many years he was facing if he went to trial and was convicted on both counts, trial counsel stated: "I don't have any independent memory of our discussions as – as we have discussed telephonically of those conversations. But I routinely discuss the exposure that a person has, uh, in – in – based upon the charges that they're facing." *Id.* at 6. When asked if it was possible that he told Black that he was facing one hundred years if he was convicted as charged, trial counsel stated that he did not think he would have told Black that. Trial counsel testified that he did not have any specific recollection of any actual advice he gave Black, but that based upon the file, he thought that his advice would have been that the charges would have to merge and that his maximum sentence would be "[f]ifty – a little over fifty." *Id.* He testified that he always leaves the choice to accept a plea agreement to the client and that he attempts to provide the client with enough information relevant to the charges against them, that he discusses any offers that the State makes, and that he would never advise a client to take an offer.

[11] On cross-examination, trial counsel testified that he thought that the charges would probably merge because the facts of the battery and the neglect were so closely related and intertwined. He testified that he was aware of the rule that two felonies could not be elevated on the basis of the same injury. When asked whether his "advice to Mr. Black about how much he was facing would have taken that into account," trial counsel answered: "Definitely." *Id.* at 9. Trial counsel indicated that that would be another reason why he would not have told Black that he was facing one hundred years. Trial counsel also stated that he did not remember Black ever giving him any indication that he thought he was facing one hundred years and that, if Black had given him any indication of that, he "would have tried to dispel him of that, uh, mistaken notion." *Id.* at 9-10.

[12] Black testified that he knew when he was charged that the sentencing range for a class A felony was twenty to fifty years. He testified that he met with his trial counsel at the jail once on this matter and twice on another matter and that the first time trial counsel spoke to him about this case he did not give any advice about how much time he was facing. During direct examination, the following exchange occurred:

> Q Okay. And when you came into Court, um, did [trial counsel] talk to you about how much time you were facing just with the charges?
>
> A Uh, yes.

Q  Okay, what did he tell you?

A  Uh, the second time he told me – he said that, um, I should just man up because it was up to the Judge.  That if I got (sic) found guilty on both, that it was up to him to rule in any manner that he wanted to rule in, so it would be best for me to plead out to one just to make sure that I didn't get, um, 2 sentences or anything different.

Q  Okay, and do you recall, um – was there ever a time when [trial counsel] said to you, you're facing 100 years?

A  Uh, no not exactly.

Q  Okay, and did there ever come a time when he said you're facing 53 years?

A  No.

Q  So was he ever specific in exactly how much time you were facing?

A  No.

*Id.* at 13-14.  Black indicated that he thought that the worst case scenario was that he was facing one hundred years.  Black testified that he rejected the initial plea offer in which he would have pled guilty to battery because he did not want to plead guilty of "harming anyone or doing any, um, malicious things to a child."  *Id.* at 17.

[13]  When asked why he accepted the plea agreement that he did, Black answered:

Because, uh, [trial counsel] stated to me right here, um, we was (sic) sitting at the table, that, uh, he didn't understand how he was gonna – I was gonna be able to beat the charge and of being the responsible adult, not about the battery. And, uh – and if, uh – if the Judge – if the Judge so pleased that this could go anywhere if you lose both cases then I would most likely be maxed out if I went to trial, so.

*Id.* at 17-18. He testified that he thought that if he accepted the plea he "would take 50 years automatically off . . . the table, and I would just have to worry about, uh, dealing with one charge instead of two." *Id.* at 18. He testified that he later learned after sentencing that fifty-three years was the most that he could have received. The following exchange occurred:

Q [A]nd so if with this understanding now that you were facing 53 years not 100, had you known that at the time when the plea offer was – was pending, would you have accepted that?

A No, I wouldn't.

Q Okay, why not?

A Because I – I – it was only a difference between 3 years and I – I would've wanted my fair shake and my fair shot. And, um, I wouldn't of wanted to sign over all my rights and my remedies at the Court if, you know – like I say, I wanted my fair shot.

*Id.* at 19-20.

[14] On cross-examination, when asked whether his trial counsel ever told him that he was facing one hundred years, Black answered: "Not exactly, no." *Id.* at 20.

He testified that trial counsel "let me know that I could be – one charge could be ran, um, after another charge saying that I could fin (sic) – if I was found guilty on 2 charges that I had to do my time on one and turn over to the next if the Judge so pleased." *Id.* He testified that he never told his trial counsel that he thought he was facing one hundred years.

[15] The following exchange occurred during questioning of Black by the court:

> THE COURT: You never asked him and he never told you what the maximum term might be?
>
> BLACK: He just told me that the maximum on a - -
>
> THE COURT: Answer my question.
>
> BLACK: Yes.
>
> THE COURT: He never told you and you never asked him what the maximum might be?
>
> BLACK: Yes.
>
> THE COURT: That's correct?
>
> BLACK: Uh, no, I'm saying no, he – he, uh – he did when he told me that one would follow the other.
>
> THE COURT: What did he tell? Did he tell you it was gonna be 30 years or 40 years or 50 years?

BLACK: Yes sir, 50 on both, sir.

*Id.* at 23.

In October 2015, the court denied Black's petition. In denying Black's petition, the court stated:

**FINDINGS OF FACT**

* * * * *

6. [Black's trial counsel] testified at the post-conviction hearing, in relevant part, as follows. He had no independent memory of discussing Mr. Black's sentencing exposure, but he routinely did discuss sentencing exposure when advising clients. He did not think he would have told Mr. Black that he was facing 100 years. He thought his advice would have been that the charges would merge and the maximum sentence would be 50 years. Had there been any indication that Mr. Black was under the impression that he was facing 100 years, [trial counsel] would have tried to dispel that impression.

7. Mr. Black testified at the post-conviction hearing, in relevant part, as follows. At the time of his guilty plea, he knew that the sentencing range for one Class A felony was 20 to 50 years. [Black's trial counsel] advised him that it would be best to "take it down to one" (i.e., to accept the plea agreement providing that Mr. Black would be convicted on only one count), but did not exactly say he was facing 100 years or any other specific amount of time. [Trial counsel] told him that, if not for the plea agreement, it would be up to the judge to determine whether his sentences would be concurrent or consecutive. Mr. Black had rejected a plea offer of 35 years for Battery, because he did not want to plead to that offense. He accepted the plea to Neglect of

a Dependent because he did not see how he could "beat" that charge. Only when he later discussed his case with deputy public defender Linda Hughes did he realize that the maximum sentence he could have received was 53 years. Had he known this, he would not have accepted the plea agreement and would have sought a "fair shot" at trial. He never told [his trial counsel] that he thought he was facing 100 years. He thought it was [his trial counsel's] responsibility to explain to him what he was facing. He did not testify that he ever asked [his trial counsel] how much time he was facing in the absence of the plea agreement.

## CONCLUSIONS OF LAW

\* \* \* \* \*

3. Mr. Black does not assert that anyone actually threatened him with the prospect of a 100-year sentence, nor that [his trial counsel] advised him that he could receive an aggregate sentence of 100 years if he did not accept the plea agreement. Rather, he appears to have concluded on his own that he could receive an aggregate sentence of 100 years, without disclosing this notion to anyone until the present post-conviction proceeding. He now asserts that this notion rendered his guilty plea involuntary.

4. It is well established that "[a] mere *hope* for a certain outcome at sentencing, without more, does not suffice to set aside a guilty plea for lack of voluntariness." *State v. Moore*, 678 N.E.2d 1258, 1267 (Ind. 1997), *cert. denied*, 523 U.S. 1079 (1998), citing *Neville v. State*, 439 N.E.2d 1358, 1360 (Ind. 1982), *and Flowers v. State*, 421 N.E.2d 632, 634 (Ind. 1981); *Harris v. State*, 762 N.E.2d 163, 167-168 (Ind. Ct. App. 2002) (emphasis added). Logically, it must be equally true that a mere *fear* of a certain outcome at sentencing in the absence of a plea agreement, without more, cannot render a guilty plea involuntary. Although no Indiana

case appears to have been decided on the sole ground that a guilty plea cannot be rendered involuntary by a defendant's own fear of an excessive sentence in the absence of an actual threat from another person, some guidance is provided by *Marshall*[ *v. State*], 590 N.E.2d 627 [(Ind. Ct. App. 1992), *trans. denied*]. In that case, one reason why post-conviction petitioner Marshall's guilty plea was not induced by an illusory threat was that there was, in reality, no threat. Marshall correctly asserted that he could not have been convicted and sentenced for all the charges filed against him. *Id.* at 630-631. Nevertheless, the existence of the superfluous charges, in itself, did not constitute a threat:

> First, "[t]he State is not required to dismiss alleged repetitive charges where the information complies with its statutory requirements." *Schweitzer v. State* (1989), Ind., 531 N.E.2d 1386, 1387. Although a defendant charged and found guilty may not be convicted and sentenced more than once for the same offense or for a single larceny [footnote omitted], the State has unrestricted discretion to file alleged repetitive charges. This unrestricted discretion prevents any of the multiple counts from being considered as illusory within the meaning of *Nash* and *Daniels* merely because they are filed. *Of course, the situation would be very different if Marshall actually had been told that he could be convicted and sentenced on each of the counts in question. The record fails to reveal that Marshall was so advised; neither does Marshall claim he was advised that he could be convicted and sentenced on all counts in all causes.*

*Id.* at 630-31 (emphasis added). The Court of Appeals went on to find that Marshall's plea was also not "induced" by the multiple charges, but did not state or suggest that the plea would have been invalid if it had been so induced. Rather, it appears that Marshall's plea was not induced by an improper threat for two independent reasons, each sufficient in itself: (1) the multiple

charges did not constitute an improper threat, and (2) Marshall's plea was not induced by the multiple charges. *See id.*

5. Mr. Black, like Marshall, was not advised that he could be convicted and sentenced for each offense as charged. No one, other than himself, led him to believe he was facing an illusory maximum sentence of 100 years. He cannot invalidate his guilty plea as involuntary merely by asserting that he was afraid he could get 100 years, even if he really was – any more than he could invalidate the plea by claiming he hoped he would get an entirely suspended sentence, even if he really did. *See, e.g., Moore*, 678 N.E.2d at 1267.

* * * * *

10. . . . [Black] appears to maintain that counsel renders ineffective assistance by failing to calculate the shortest and longest possible aggregate sentences for all charged offenses, and to advise the defendant accordingly, *even in the absence of any specific inquiry by the defendant*. Mr. Black cites no governing authority for this proposition, and none is known to the Court.

11. In *Scott v. State*, 986 N.E.2d 292 (Ind. Ct. App. 2013), counsel rendered ineffective assistance in telling defendant Scott that his maximum aggregate sentence would be 30 years, when actually (in view of Indiana double-jeopardy considerations) it would only have been 23 years. *Id.* at 295-296. Had [Black's trial counsel] told Mr. Black that his maximum aggregate sentence would be 100 years if not for the plea agreement, *Scott* would be controlling, as it is undisputed that Mr. Black's actual maximum aggregate sentence would have been 53 years. It is also undisputed, however, that [trial counsel] did not tell Mr. Black he was facing 100 years. Neither *Scott* nor any other known authority suggests that it is deficient performance merely to fail to calculate the maximum possible aggregate sentence, and

to advise the defendant accordingly, when the defendant has never asked what the maximum aggregate sentence was, nor suggested that he had an incorrect idea about what it was. Even *Scott* had not been decided at the time of Mr. Black's guilty plea in 2011. As no existing authority at the time of Mr. Black's guilty plea established that [trial counsel] had a duty to inform Mr. Black of the maximum possible aggregate sentence, when Mr. Black had never asked about it or suggested that he had a wrong idea about it, [trial counsel] cannot be found ineffective for failing to do so – even if he did fail to do so. *Cf. Sweeney v. State*, 886 N.E.2d 1, 9-10 (Ind. Ct. App. 2008); *Williamson v. State*, 798 N.E.2d 450, 454 (Ind. Ct. App. 2003), *trans. denied*, and cases cited therein.

12. Furthermore, Mr. Black's defense did not suffer prejudice from [trial counsel's] claimed error. In terms of the three-factor analysis set forth in *Suarez* [*v. State*,] 967 N.E.2d 552 [Ind. Ct. App. 2012), *reh'g denied*, *trans. denied*], although the benefit conferred by the guilty plea was fairly small (three years off the maximum aggregate sentence, plus the opportunity to argue that mitigating weight should be given to the guilty plea), the strength of the State's case appears to have been very great. Mr. Black acknowledged that he saw no way to "beat" the charge of Neglect of a Dependent. No evidence suggests that he had any defense, or any chance of acquittal, as to that charge. As to whether Mr. Black's decision to plead was "driven by the erroneous advice," [trial counsel] did not actually give any erroneous advice. To the extent that [trial counsel's] failure to give unrequested advice about the maximum aggregate sentence might itself be arguably regarded as "erroneous advice," Mr. Black's conclusion that he was facing 100 years was not "driven" by that supposed advice, but rather by his own failure to ask whether he was right in thinking he faced 100 years. Had he asked, [trial counsel's] testimony indicates, he would have learned that he was not facing anywhere near 100 years.

13. Under these circumstances, there is no "objectively credible factual and legal basis" showing a reasonable probability that, but for [trial counsel's] claimed error, Mr. Black would really have decided to go to trial rather than plead guilty. *Cf. Segura* [*v. State*, 749 N.E.2d 496, 506-507 (Ind. 2001)]. A rational defendant would have decided that, in view of the practical certainty of being convicted of Neglect of a Dependent in any event, it would be wise to accept a three-year reduction in the maximum aggregate sentence, and to seek a shorter sentence than the maximum by arguing that mitigating weight should be given to his guilty plea. This is what Mr. Black actually did. His present assertion that he would have risked receiving a 53-year executed sentence can only be based on (1) a wholly unfounded conjecture that a jury might have found him not guilty of Neglect of a Dependent, and (2) a hope that a jury might have found him not guilty of Battery, when the plea agreement guaranteed that he would not be found guilty of that offense. The State asserts, and the Court agrees, that he should not be believed.

Appellant's Appendix at 120, 122-127, 129-132 (footnote and some citations omitted).

## *Discussion*

[17] Before discussing Black's allegations of error, we observe that the purpose of a petition for post-conviction relief is to raise issues unknown or unavailable to a defendant at the time of the original trial and appeal. *Reed v. State*, 856 N.E.2d 1189, 1194 (Ind. 2006). A post-conviction petition is not a substitute for an appeal. *Id.* Further, post-conviction proceedings do not afford a petitioner a "super-appeal." *Id.* The post-conviction rules contemplate a narrow remedy for subsequent collateral challenges to convictions. *Id.* If an issue was known and available but not raised on appeal, it is waived. *Id.*

[18]  We also note the general standard under which we review a post-conviction court's denial of a petition for post-conviction relief. The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004); Ind. Post-Conviction Rule 1(5). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Fisher*, 810 N.E.2d at 679. On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *Id.* Further, the post-conviction court in this case entered findings of fact and conclusions thereon in accordance with Indiana Post-Conviction Rule 1(6). "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error – that which leaves us with a definite and firm conviction that a mistake has been made." *Id.* In this review, we accept findings of fact unless clearly erroneous, but we accord no deference to conclusions of law. *Id.* The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Id.*

[19]  Black argues that we should hold that counsel must advise a client as to the penal consequences of standing trial and that failing to carry out that duty amounts to deficient performance, but he acknowledges that the question appears to be one of first impression in Indiana. He asserts that the reduction of penal consequences is almost always the most important factor in a defendant's decision to accept or reject a plea offer and that accurate advice from counsel

will help to ensure that the decision is made knowingly, intelligently, and voluntarily. Black contends that the post-conviction court faulted him for not asking counsel as to whether his understanding of the penal consequences of standing trial was correct and improperly placed the onus on him. Without citation to the record, he asserts that the post-conviction court credited certain portions of his testimony, such as that he had thought that the maximum sentence was one hundred years and that counsel had never advised him that the maximum sentence was really fifty-three years. He asserts that his plea was involuntary because of the disparity between what he believed the maximum sentence to be and what it actually was.

[20] The State argues that Black incorrectly asserts that the post-conviction court made a finding of fact that trial counsel provided no information to Black about his exposure to punishment. The State asserts that the post-conviction court's findings reflect that it was merely considering the hypothetical merits of Black's theory *if* his account were true. The State contends that the post-conviction court expressly found Black was not credible in asserting that he would have chosen to go to trial had he known he faced fifty-three years rather than one hundred years. It argues that Black failed to show prejudice as a result of the alleged failure because he presented no evidence that remotely contests the post-conviction court's conclusion that conviction at trial was a practical certainty and because the post-conviction court properly declined to credit his testimony. The State also argues that Black failed to establish that his guilty plea was not voluntary.

[21] With respect to the voluntariness of his guilty plea, the Indiana Supreme Court has held that a plea entered after the trial judge has reviewed the various rights which a defendant is waiving and made the inquiries called for by statute is unlikely to be found wanting in a collateral attack. *State v. Moore*, 678 N.E.2d 1258, 1265 (Ind. 1997), *reh'g denied*, *cert. denied*, 523 U.S. 1079 (1998). However, defendants who can show that they were coerced or misled into pleading guilty by the judge, prosecutor or defense counsel will present colorable claims for relief. *Id.* at 1266. In assessing the voluntariness of the plea, we review all the evidence before the court which heard his post-conviction petition, including testimony given at the post-conviction hearing, the transcript of the petitioner's original sentencing, and any plea agreements or other exhibits which are a part of the record. *Id.* In *Moore*, the Court held that "[v]oluntariness is also distinct from ineffective assistance of counsel, despite some references in our cases to pleas as involuntary" and that voluntariness "focuses on whether the defendant knowingly and freely entered the plea, in contrast to ineffective assistance, which turns on the performance of counsel and resulting prejudice." *Id.*

[22] Generally, to prevail on a claim of ineffective assistance of counsel a petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002) (citing *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), *reh'g denied*). A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional

norms.  *Id.*  To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Id.*  A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Perez v. State*, 748 N.E.2d 853, 854 (Ind. 2001).  Failure to satisfy either prong will cause the claim to fail.  *French*, 778 N.E.2d at 824.  Most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone.  *Id.*

[23]  When considering a claim of ineffective assistance of counsel, a "strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Morgan v. State*, 755 N.E.2d 1070, 1072 (Ind. 2001).  "[C]ounsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption."  *Williams v. State*, 771 N.E.2d 70, 73 (Ind. 2002).  Evidence of isolated poor strategy, inexperience, or bad tactics will not support a claim of ineffective assistance of counsel.  *Clark v. State*, 668 N.E.2d 1206, 1211 (Ind. 1996), *reh'g denied*, *cert. denied*, 520 U.S. 1171, 117 S. Ct. 1438 (1997).

[24]  Because Black was convicted pursuant to a guilty plea, we analyze his claims under *Segura v. State*, 749 N.E.2d 496 (Ind. 2001).  *Segura* categorizes two main types of ineffective assistance of counsel cases.  *Smith v. State*, 770 N.E.2d 290, 295 (Ind. 2002).  The first category relates to "an unutilized defense or failure to mitigate a penalty."  *Willoughby v. State*, 792 N.E.2d 560, 563 (Ind. Ct. App. 2003), *trans. denied*.  The second relates to "an improper advisement of penal

consequences," and this category has two subcategories: (1) "claims of intimidation by exaggerated penalty or enticement by an understated maximum exposure;" or (2) "claims of incorrect advice as to the law." *Id.* Black's claim appears to fall under the first sub-category of a claim of intimidation by exaggerated penalty. *See id.* at 562-563 (holding that petitioner's claim that his plea agreement was not knowing, voluntary, or intelligent because his trial counsel failed to properly inform him of the single larceny rule fell under the first sub-category of the second category).

[25] With respect to claims of exaggerated penalty, the *Segura* Court stated:

> Whether viewed as ineffective assistance of counsel or an involuntary plea, the postconviction court must resolve the factual issue of the materiality of the bad advice in the decision to plead, and postconviction relief may be granted if the plea can be shown to have been influenced by counsel's error. However, if the postconviction court finds that the petitioner would have pleaded guilty even if competently advised as to the penal consequences, the error in advice is immaterial to the decision to plead and there is no prejudice.

*Segura*, 749 N.E.2d at 504-505. *See also Willoughby*, 792 N.E.2d at 563 (holding that it was immaterial whether the petitioner's claim was of an involuntary plea or ineffective assistance and that under either standard, the petitioner must demonstrate that the intimidation resulting from his trial counsel's failure to inform him of the single larceny rule was material to his decision to plead guilty); *see also Graham v. State*, 941 N.E.2d 1091, 1101-1102 (Ind. Ct. App. 2011) (holding that the standard set out in *Segura* and *Willoughby* was equally

applicable to straightforward claims of an involuntary or illusory plea), *aff'd on reh'g*, 947 N.E.2d 962.

[26] The court in *Willoughby* observed that "[b]ecause the application of this sub-category's standard was not enunciated by *Segura*, it is necessary to examine the other category and sub-category of *Segura* to determine how to properly apply the above standard." 792 N.E.2d at 563. The court also held that "this sub-category's inclusion under *Segura's* 'penal consequences' category indicates [the Indiana Supreme Court's] desire to utilize the 'claims of incorrect advice as to the law' sub-category's standard." *Id.* at 564.

[27] In *Segura*, with respect to prejudice from advice that omits or misdescribes penal consequences, the Court held:

> We see no reason to require revisiting a guilty plea if, at the end of the day, the inevitable result is conviction and the same sentence. Yet, we agree that in extreme cases, a credible scenario can be posited that results in a truly innocent defendant pleading guilty because of incorrect advice as to the consequences. The cases where a showing of prejudice from incorrect advice as to the inevitable consequences of conviction will be able to be made may be few. If such a circumstance is shown, however, the defendant should not be stripped of the presumption of innocence, the requirement of proof beyond a reasonable doubt, and the other procedural rights that are not available in postconviction proceedings. To require a showing of innocence to obtain a new trial would have that effect. Accordingly, we conclude that in order to state a claim for postconviction relief a petitioner may not simply allege that a plea would not have been entered. Nor is the petitioner's conclusory testimony to that effect sufficient to prove prejudice. To state a claim of prejudice

from counsel's omission or misdescription of penal consequences that attaches to both a plea and a conviction at trial, the petitioner must allege, in *Hill's* terms, "special circumstances,"[3] or, as others have put it, "objective facts"[4] supporting the conclusion that the decision to plead was driven by the erroneous advice.

We believe a showing of prejudice from incorrect advice as to the penal consequences is to be judged by an objective standard, i.e., there must be a showing of facts that support a reasonable probability that the hypothetical reasonable defendant would have elected to go to trial if properly advised. . . . [A] petitioner may be entitled to relief if there is an objectively credible factual and legal basis from which it may be concluded that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59, 106 S. Ct. 366.

. . . [F]or claims relating to penal consequences, a petitioner must establish, by objective facts, circumstances that support the conclusion that counsel's errors in advice as to penal consequences were material to the decision to plead. Merely alleging that the petitioner would not have pleaded is insufficient. Rather, specific facts, in addition to the petitioner's conclusory allegation, must establish an objective reasonable probability that competent representation would have caused the petitioner not to enter a plea.

---

[3] *Hill* [*v. Lockhart*, 474 U.S. 52, 60, 106 S. Ct. 366 (1985)].

[4] *McCleese v. United States*, 75 F.3d 1174, 1179 (7th Cir.1996); *State v. Donald*, 198 Ariz. 406, 10 P.3d 1193, 1201 (Ct. App. 2000)[, *review denied*, *cert. denied*, 534 U.S. 825, 122 S. Ct. 63 (2001)].

*Segura*, 749 N.E.2d at 507.

[28] Relying upon *Segura*, this court later held, "when an error in advice supports a claim of intimidation by exaggerated penalty, a petitioner must establish specific facts that lead to the conclusion that a reasonable defendant would not have entered a plea had the error in advice not been committed." *Willoughby*, 792 N.E.2d at 564. "In addition to any special circumstances shown by the defendant, we also think it appropriate to consider the strength of the State's case." *Suarez v. State*, 967 N.E.2d 552, 556 (Ind. Ct. App. 2012), *reh'g denied*, *trans. denied*. "It is apparent that any reasonable defendant would take this into account when pondering a guilty plea." *Id.* It is "also appropriate to consider the benefit conferred upon the defendant by his guilty plea." *Id.*

[29] Defense attorneys have an obligation to advise their clients regarding the possible penal consequences of standing trial. One of the most important roles a defense attorney plays is to help clients navigate this complex decision-making process. It is incumbent upon the attorney to describe the best and worst case scenarios as to penal consequences the client would face whether the client pleads guilty, with or without a plea agreement, or stands trial. We conclude that, under these circumstances, if Black's trial counsel failed to advise him of the maximum sentence he would face at trial, then this would constitute deficient performance. *See United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992) ("Knowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty."); *Carrion v. Smith*, 644 F. Supp. 2d 452, 467 (S.D.N.Y. 2009) ("When a

plea offer is made and there is a reasonable probability that the defendant is uncertain about the sentencing exposure he faces, whether or not he accepts the plea, a lawyer unquestionably has a duty to inform his client of the sentencing exposure he faces if he accepts the plea offer and if he does not."), *aff'd*, 365 F. App'x 278 (2d Cir. 2010); *Ayres v. State*, 93 S.W.3d 827, 834 (Mo. Ct. App. 2002) ("It is the duty of counsel to advise a client of the possible consequences of trial so that the client may make an informed decision as to whether to accept or to reject a plea agreement."); ABA STANDARDS FOR CRIMINAL JUSTICE PROSECUTION FUNCTION AND DEFENSE FUNCTION 197-198 (3rd ed. 1993) (Standard 4-5.1 provides that "defense counsel should advise the accused with complete candor concerning all aspects of the case, including a candid estimate of the probable outcome," and the Commentary provides that counsel should inform the client of "the probable outcome of alternative choices" and "[c]ounsel should inform the defendant of the maximum and minimum sentences that can be imposed . . . ."); *see also Padilla v. Kentucky*, 559 U.S. 356, 370, 130 S. Ct. 1473, 1484 (2010) (holding that there is no relevant difference between an act of commission and an act of omission in failing to inform a defendant of the consequences of a plea and that a holding limited to affirmative misadvice would invite the absurd result of giving counsel an incentive to remain silent on matters of great importance, even when answers are readily available and that "[s]ilence under these circumstances would be fundamentally at odds with the critical obligation of counsel to advise the client of 'the advantages and disadvantages of a plea agreement'") (quoting *Libretti v.*

*United States*, 516 U.S. 29, 50-51, 116 S. Ct. 356 (1995));[5] *Segura*, 749 N.E.2d at 499 (addressing a claim that counsel's incorrect advice as to the penal consequences led the petitioner to plead guilty when he otherwise would not have done so and concluding that "a finding of prejudice requires evidence demonstrating a reasonable probability that the erroneous *or omitted advice* materially affected the decision to plead guilty") (emphasis added).

[30]     Nonetheless, we cannot say that Black has demonstrated that he was prejudiced or that any omission in advice was material to the decision to plead. The post-conviction court found that "the strength of the State's case appears to have been very great" and "[n]o evidence suggests that he had any defense, or any chance of acquittal" to the charge of neglect of a dependent. Appellant's Appendix at 130. Black makes no argument that this finding was improper. Further, the post-conviction court found Black's testimony that he would have risked receiving a greater sentence incredible.[6] While pleading guilty may have

---

[5] Justice Scalia concluded in his dissenting opinion, which was joined by Justice Thomas, that because the subject of the misadvice, the consequence of deportation, was not the prosecution for which Padilla was entitled to effective assistance of counsel, the Sixth Amendment had no application. *Id.* at 390, 130 S. Ct. at 1495. However, Justice Scalia also touched on whether trial counsel should advise a defendant of the maximum sentence if he went to trial when he stated:

> There is no basis in text or in principle to extend the constitutionally required advice regarding guilty pleas beyond those matters germane to the criminal prosecution at hand—to wit, the sentence that the plea will produce, *the higher sentence that conviction after trial might entail*, and the chances of such a conviction. Such matters fall within "the range of competence demanded of attorneys in criminal cases," *McMann v. Richardson*, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L.Ed.2d 763 (1970).

*Id.* at 390, 130 S. Ct. at 1495 (emphasis added).

[6] Black argues that "the post-conviction court judged his testimony under the wrong standard and, alternatively, that it applied the right standard incorrectly." Appellant's Brief at 14. He asserts that "[f]or the post-conviction court, the question was not what Black would have decided to do had he been accurately advised but rather what a hypothetical defendant would have decided to do." *Id.* Black states that the court

reduced Black's potential sentence by only three years from fifty-three years to fifty years, the post-conviction court considered this reduction, as well as the practical certainty of being convicted of neglect and the opportunity to argue that mitigating weight should be given to his guilty plea. Under these circumstances, we cannot say that Black has demonstrated that he was prejudiced or that his plea was involuntary.

## *Conclusion*

[31] For the foregoing reasons, we affirm the post-conviction court's denial of Black's petition for post-conviction relief.

[32] Affirmed.

Baker, J., and May, J., concur.

---

in *Segura* at one point stated that a showing of prejudice is to be judged by an objective standard but ultimately rejected an objective standard for prejudice and that the dispositive question is whether, but for counsel's errors, he personally, and not a hypothetical defendant, would not have pled guilty and would have insisted on going to trial. The post-conviction court's order states that "to prevail on a claim that counsel was ineffective in giving bad advice about the penal consequences of a guilty plea, the petitioner must show a reasonable probability that he would not have entered a plea of guilty if not for counsel's errors in giving the advice." Appellant's Appendix at 124 (citing *Segura*, 749 N.E.2d at 506-507). The post-conviction court also stated that to do this, the petitioner "must present an 'objectively credible factual and legal basis' showing a reasonable probability that, but for counsel's errors in giving the advice, he would have made a different decision as to whether to plead guilty." *Id.* (quoting *Segura*, 749 N.E.2d at 507). We cannot say that the post-conviction court applied the wrong standard.