## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 12 2018, 9:13 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Steven H. Schutte
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jonathan McPherson,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | February 12, 2018<br><br>Court of Appeals Case No.<br>20A03-1706-PC-1326<br><br>Appeal from the<br>Elkhart Superior Court<br><br>The Honorable<br>Teresa L. Cataldo, Judge<br><br>Trial Court Cause No.<br>20D03-1508-PC-34 |

**Kirsch, Judge.**

Jonathan McPherson[1] ("McPherson") was convicted, following a jury trial, under a now-repealed law, of two counts of Class A felony dealing in cocaine.[2] He also was convicted of Class D felony maintaining a common nuisance[3] and Class B felony unlawful possession of a firearm by a serious violent felon ("SVF"),[4] and he was found to be a habitual offender.[5] The trial court sentenced McPherson to ninety-three years. On direct appeal, this court affirmed McPherson's convictions, but reduced his sentence to seventy-five years, finding that the sentences for being a habitual offender and possessing a firearm as a SVF constituted an impermissible double enhancement because they relied on the same predicate felony conviction. *McPherson v. State*, No. 20A04-1409-CR-428, 32 N.E.3d 284, at \*4 (Ind. Ct. App. Apr. 28, 2015). McPherson filed a petition for post-conviction relief, which the post-conviction court denied. McPherson now appeals, raising the following restated issues:

---

[1] The record before us reveals Petitioner's name also spelled as "Jonathon" and shows a middle initial of "G." *State's Ex*. 201.

[2] *See* Ind. Code § 35-48-4-1(b)(3)(iv) (2012). McPherson was convicted of two counts of dealing cocaine, each of which was elevated from a Class B felony to a Class A felony because the crimes were committed within 1,000 feet of a youth program center. Indiana Code section 35-48-4-1 was amended in 2013, effective July 1, 2014, to remove the enhancement of dealing within 1,000 feet of a youth program center. *See* Pub. Law 158-2013, § 622. McPherson, however, was charged under the statute that existed at the time he committed the offenses.

[3] *See* Ind. Code § 35-48-4-13(b)(2) (2011).

[4] *See* Ind. Code § 35-47-4-5(c) (2011).

[5] *See* Ind. Code § 35-50-2-8(a) (2011).

I. Whether the post-conviction court clearly erred when it found that McPherson did not prove that trial counsel was ineffective; and

II. Whether the post-conviction court clearly erred when it found that McPherson did not prove that appellate counsel was ineffective.

We affirm.

## Facts and Procedural History[6]

The facts of McPherson's offenses are summarized by this court's decision on direct appeal as follows:

> On May 16 and May 18, 2012, McPherson sold cocaine to different confidential informants working with the Elkhart Police Department. McPherson conducted both sales at his house, 412 Brady Street, in Elkhart. Directly across the street from McPherson's house, located at 411 Brady Street, is "Cornerstone Ministries Boy's and Girl's Club." The sign on the building reads:
>
> Cornerstone Ministries Boy's and Girl's Club
> By Sandy Ridge Mennonite Church
> Meet Every Wednesday 5:30 p.m.
>
> *Ex.* 9 (phone numbers omitted). Detective Tim Freel, who used to live in the neighborhood, explained that the Boys and Girls Club "would have different groups of children come in there;

---

[6] We will cite to the direct appeal using the letters "D.A." and to the post-conviction proceedings with the letters "P-CR."

typically, on a Wednesday night they had a program called 'Wednesday Night Club.'" He added that children often played basketball outside at the Club. In addition, Detective Andrew Whitmyer, who participated in the surveillance of McPherson's house on May 16, recalled seeing more children than usual at the Boys and Girls Club that day. He observed both "younger" and "older" kids playing and said that the activities appeared to be organized.

Elkhart police officers obtained and executed a search warrant for McPherson's house on May 29. McPherson and his girlfriend were home at the time. The officers found two digital scales with powdery residue and baggies with cut-off corners. The officers also found a loaded .40 caliber semiautomatic pistol inside a purse, a box of .40 caliber ammunition in a tote, and a loaded magazine for the pistol inside the pocket of a red sweatshirt—all in the master bedroom that McPherson used.

Detective Freel read McPherson his *Miranda* rights and then began to question him. McPherson admitted to "selling drugs from the house," "admitted to a firearm that was found inside the house," knew that his house was directly across the street from the Boys and Girls Club, and admitted that the $804 in cash found on his person was "proceeds from drug sales." Although no drugs were found during the search of McPherson's house, McPherson explained that he "was currently out of drugs and that he was planning to . . . re-up, or purchase more drugs, so that he could sell those drugs later on that afternoon." Finally, McPherson admitted that he had a prior felony conviction for dealing in cocaine and that as a result of that felony conviction, he could not possess a firearm.

The State charged McPherson with two counts of Class A felony dealing in cocaine (within 1,000 feet of youth program center) for the controlled buys on May 16 and 18, 2012; Class D felony maintaining a common nuisance for drug activities at his house

on or between May 16 and 29; and Class B felony unlawful possession of a firearm by a SVF for the firearm found during the May 29 search of his house. The State alleged that McPherson was a SVF as a result of his 1997 conviction in Elkhart County for Class B felony dealing in cocaine. The State also alleged that McPherson was a habitual offender. For the two prior unrelated felony convictions, the State used McPherson's 1997 dealing-in-cocaine conviction as well as McPherson's 2008 conviction in Elkhart County for criminal recklessness resulting in serious bodily injury.

McPherson's jury trial was conducted in three phases. During the first phase, the jury found McPherson guilty of both dealing counts and maintaining a common nuisance. During the second phase, the jury found McPherson guilty of unlawful possession of a firearm by a SVF. During the third and final phase, the jury found that McPherson was a habitual offender.

*McPherson,* 32 N.E.3d 284, at *1-3 (footnotes omitted) (internal citations omitted). The trial court sentenced McPherson to an aggregate term of ninety-three years executed. McPherson was represented at trial by attorney Matthew Johnson ("trial counsel" or "Johnson"), an Elkhart County Public Defender.

[4] On direct appeal, McPherson was represented by attorney Elizabeth Bellin ("appellate counsel" or "Bellin"), who raised several issues, including:[7]

---

[7] We have paraphrased the language of the issues presented on direct appeal.

(1) The habitual offender enhancement and SVF conviction constituted an impermissible double jeopardy enhancement because they relied on the same predicate felony conviction;

(2) The evidence was insufficient to prove that the "Cornerstone Ministries Boy's and Girl's Club" ("Boys and Girls Club") was a youth program center, as was required to enhance the dealing offense from a Class B felony to a Class A felony; and

(3) The evidence was insufficient to prove that he had two prior unrelated felonies to support the habitual offender enhancement.

*P-CR Appellant's App. Vol. II* at 45-46. A panel of this court found sufficient evidence to affirm McPherson's convictions, but agreed with McPherson that the trial court had erred in sentencing. We remanded the case to the trial court with instructions to run McPherson's sentence for unlawful possession of a firearm by a SVF and his habitual offender enhancement concurrently, resulting in an aggregate sentence of seventy-five years. *McPherson*, 32 N.E.3d 284, at *4.

[5] On October 25, 2016, McPherson filed a petition for post-conviction relief raising two issues. First, McPherson argued that his trial counsel was ineffective for not proceeding with the theory that the enhancement under the dealing cocaine statute—*i.e.*, selling cocaine within 1,000 feet of a youth program center—was unconstitutionally vague, and that McPherson was prejudiced by trial counsel's failure to raise that issue. *P-CR Appellant's App. Vol. II* at 47. Second, McPherson argued that his appellate counsel was ineffective for not arguing that the statute under which McPherson was convicted was unconstitutionally vague, which again caused him prejudice. *Id.* at 51.

[6] On January 3, 2017, the post-conviction court held an evidentiary hearing on McPherson's petition. Regarding trial counsel's representation, Johnson testified that he remembered the enhancement that raised McPherson's charges of dealing cocaine from Class B felonies to Class A felonies as being whether the drug deal had occurred within 1,000 feet of "a youth program center." *P-CR Tr. Vol. I* at 7. Johnson could not recall whether he considered mounting a vagueness challenge to the "youth program center" enhancement. *Id.* at 8. Johnson did, however, describe to the post-conviction court the theory he pursued at trial as follows:

> Q. And I think you've already suggested your answer to this question, let me ask it specifically, do you remember what your thoughts were about whether there was a defense to the enhancement?
>
> A. For the defense to the enhancement, what I -– what I attempted to do at trial was to show that this was more of a church and not youth program center, though kids went to the church and played basketball and such things, that it was not so much of a -– of a youth program center as a church. That was the defense that we attempted to put forward.
>
> Q. More of a sufficiency claim then?
>
> A. More of a sufficiency claim.

*Id.* at 8.

[7] Regarding the actions of appellate counsel, Bellin testified at the post-conviction hearing that, at the time of McPherson's direct appeal, she was familiar with a

case, "*Whatley v. State*," that challenged whether the enhancement of being within 1,000 feet of a youth program center was unconstitutionally vague under the United States Constitution. *Id*. at 12. Bellin stated that, while this question of constitutionality was one of the issues she researched in early 2015, she did not raise that issue on direct appeal because "[i]n reviewing the transcript at trial, Mr. McPherson's trial counsel did not object or file any sort of motion to dismiss based on the constitutionality of the statute itself." *Id*. at 12-13.

[8] Bellin explained,

> If trial counsel fails to object at the time of trial and/or fails to raise that issue in a motion to dismiss, as everyone practices regularly is aware of that, when you go to challenge a statute, specifically, you need to challenge that in a motion to dismiss. That would be a separate filing and would accompany a memorandum; a separate hearing would have to be held . . . separate from the trial itself, and the court would have to make a ruling on that motion to dismiss prior to trial. That was never done at the trial level. The fact that his trial counsel did not do that at the trial level constitutes a waiver for purposes of a direct appeal.

*Id*. at 13. Bellin testified that she spoke with trial counsel and, "based on the evidence that was presented in the trial," "we were looking at sufficiency." *Id*. "[A]t no point was the vagueness brought up as a potential issue on appeal." *Id*. Bellin noted, "At the time of Mr. McPherson's appeal, the law for which he was convicted of was a valid law." *Id*. at 16. Bellin also believed that a vagueness challenge would not be successful because a motion to dismiss had not been filed by trial counsel. *P-CR Tr*. at 13. The post-conviction court found

that trial counsel and appellate counsel were not deficient in their legal representation and denied McPherson's petition for post-conviction relief. McPherson now appeals.

## Discussion and Decision

[9] On appeal, McPherson contends that his trial counsel and appellate counsel provided ineffective assistance of counsel, and therefore, the post-conviction court erred by not granting him the relief of vacating his two convictions for Class A felony dealing and entering judgment and sentence on those convictions as Class B felonies. Specifically, he contends that trial counsel and appellate counsel should have argued, that the youth program center enhancement was unconstitutionally vague.

[10] Post-conviction proceedings do not afford the petitioner an opportunity for a super appeal. *Newton v. State*, 83 N.E.3d 726, 732 (Ind. Ct. App. 2017). Rather, post-conviction proceedings provide the petitioner an opportunity to raise issues that were unknown or unavailable at the time of the original trial or the direct appeal. *Id*. The proceedings do not substitute for a direct appeal and provide only a narrow remedy for subsequent collateral challenges to convictions. *Id*

> "The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence." *Humphrey v. State,* 73 N.E.3d 677, 681 (Ind. 2017). "When appealing the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment." *Id*. To prevail on appeal from the denial of post-conviction relief, the petitioner must show the evidence leads "unerringly and unmistakably to a conclusion opposite that

reached by the post-conviction court." *Id.* We do not defer to the post-conviction court's legal conclusions, but "a post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Id.* at 682.

*Newton*, 83 N.E.3d at 732.

# I. Trial Counsel

McPherson contends that he was sentenced under the unconstitutional youth program center enhancement, and therefore, the post-conviction court erred in concluding that "[he] should continue to serve the enhanced sentence despite that fact." *Appellant's Br.* at 5. McPherson asserts, "Because the post-conviction court's legal conclusion is erroneous, the lower court's ruling should be reversed." *Id.* The issue before us, however, is not whether the sentencing enhancement should apply. Instead, we must decide whether the post-conviction court erred in finding that (1) trial counsel was not ineffective for not arguing that the enhancement was unconstitutionally vague, and (2) McPherson was not prejudiced by trial counsel's failure to raise a vagueness claim.

To prevail on a claim of ineffective assistance of trial counsel, a petitioner must prove that (1) his or her counsel's performance was deficient, *i.e.*, counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed to defendant by the Sixth and Fourteenth Amendments, and (2) petitioner was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668,

687 (1984); *Black v. State*, 54 N.E.3d 414, 424 (Ind. Ct. App. 2016), *trans. denied*. Counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *Black*, 54 N.E.3d at 424. To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. "Moreover, because a petitioner must prove both deficient performance and prejudice in order to succeed, the failure to prove either element defeats the claim." *Myers v. State*, 33 N.E.3d 1077, 1089 (Ind. Ct. App. 2015), *trans. denied*.

[13] "When considering a claim of ineffective assistance of counsel, a 'strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'"; a defendant must offer strong and convincing evidence to overcome this presumption. *Black*, 54 N.E.3d at 424-25 (quoting *Morgan v. State*, 755 N.E.2d 1070, 1073 (Ind. 2001)). Evidence of isolated poor strategy, inexperience, or bad tactics will not support a claim of ineffective assistance of counsel. *Id*. The post-conviction court must assess trial counsel's decisions objectively, in view of what a "reasonably competent attorney" could have chosen to do or not do under the circumstances. *Harrington v. Richter*, 562 U.S. 86, 110 (2011). "Representation is constitutionally ineffective only if it 'so undermined the proper functioning of the adversarial process' that the defendant was denied a fair trial." *Id*. (quoting *Strickland*,466 U.S. at 686). "Just as there is no

expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Id*.

[14] To support his claim that trial counsel was ineffective for not raising the issue that the youth program center enhancement was unconstitutionally vague, McPherson relies exclusively on *Whatley v. Zatecky*, 833 F.3d 762 (7th Cir. 2016). Whatley was arrested at his father's home on a warrant for an unrelated charge. *Whatley*, 833 F.3d at 765. The arresting officer discovered a bag containing just over three grams of cocaine in Whatley's pocket. *Id*. At that time, possession of that amount of cocaine was a Class C felony, with a sentencing range of two to eight years. *Id*. Whatley's crime was enhanced to a Class A felony after police found that Whatley's father's home was located approximately 795 feet from the Robinson Community Church ("Church")—a venue that witnesses testified was a youth program center. A "youth program center" was defined as any "building or structure that on a *regular* basis provides recreational, vocational, academic, social, or other programs or services for persons less than eighteen (18) years of age." *Id*. at 765 (quoting Ind. Code § 35-41-1-29(a) (emphasis added) (2011)).[8] Whatley was convicted of a Class A felony, in part, on evidence that included testimony of the Church's pastor that,

---

[8] The definition of "youth program center" is now found in Indiana Code section 35-31.5-2-357(a) (2012). The recodification from section 35-41-1-29 to section 35-31.5-2-357 was effective on July 1, 2012.

in any given week, the church hosted a number of events targeted to persons under the age of eighteen. *Id*. at 765.

[15] The Seventh Circuit reversed Whatley's Class A felony conviction.[9] The Court recognized that due process requires that a criminal statute give a person an opportunity to conform his conduct to the law, a requirement that applies with equal force to the conduct used to enhance a sentence. *Whatley*, 833 F.3d at 784. Focusing on the enhancement's requirement that programs and services must be provided on a "regular basis," the Seventh Circuit concluded:

> The Indiana courts failed to narrow the statute by adding an intent element, by limiting application to the core cases of facilities such as YMCAs or Boys and Girls Clubs, or by providing any objective standard to the meaning of "regular." There was no "reasonable basis for the state court to deny relief." As applied to Whatley, the statute delegated to the police, the prosecutor and the jury the task of determining what conduct was proscribed. No one in Whatley's position could have known that the Robinson Community Church would fall within the definition simply because it hosted a handful of children's events each week and otherwise bore no indicia of the children's activities within.

---

[9] The Seventh Circuit held, "We therefore reverse and remand the judgment, with instructions to grant the writ of *habeas corpus* ordering that, within sixty days, Whatley either be released or that he be re-sentenced under the Class C felony statute. If he is re-sentenced, he must, of course, be given credit for the time he served under the Class A felony conviction." *Whatley v. Zatecky*, 833 F.3d 762, 784-85 (7th Cir. 2016).

*Whatley*, 833 F.3d at 784. Noting that a criminal law should not be so vague that "it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement," the Seventh Circuit held that the enhancement's definition of "youth program center" was unconstitutional because it "forbade conduct in terms so vague that persons of ordinary intelligence must necessarily guess at the statute's meaning and differ as to its application." *Whatley*, 833 F.3d at 766, 782. In granting Whatley relief, the Seventh Circuit stated: "It is the particular language of the Indiana statute that is at issue here, and more importantly the unique circumstances of its application to Whatley." *Id*. at 782.

[16] The instant case is distinguishable from *Whatley*. Unlike Whatley, who may or may not have known there was a church that provided youth center programs near his father's home, here, the building in question was right across the street from McPherson's home, a mere sixty-eight feet away.[10] *D.A. Tr*. at 263. Printed on the building, in big black letters, were the words, "Cornerstone Ministries Boy's and Girl's Club, Meet Every Wednesday 5:30 p.m." *D.A. State's Ex*. 9. Detective Tim Freel, who himself lived in the subject neighborhood, testified at trial that the Boys and Girls Club "would have different groups of children come in there; typically, on a Wednesday night they had a program called 'Wednesday Night Club.'" *D.A. Tr*. at 391. McPherson

---

[10] The affidavit in support of McPherson's warrantless arrest stated that the distance between the house and the Boys and Girls Club was approximately seventy-five feet. *D.A. Appellant's App. Vol. IV* at 156.

sold cocaine to a confidential informant on Wednesday, May 16, 2012. *Id*. at 392.

[17] Detective Freel also testified:

> Mr. McPherson admitted to selling drugs from the house. Mr. McPherson admitted to a firearm that was found inside the house. Mr. McPherson acknowledged to me that he was aware that the house was directly across the street from the Boys and Girls Club, which was also connected to a city park.

*Id.* at 382. Even if trial counsel had raised the issue that the enhancement was unconstitutionally vague as applied to the facts before the court, it would have been difficult for the trial court to conclude that as to McPherson, who admitted he lived across the street from the Boys and Girls Club, the enhancement forbade conduct in terms so vague that he had to guess whether the locale of his drug sales was within 1,000 feet of a building that qualified as a youth program center.

[18] Moreover, McPherson committed his dealing offenses in May 2012 and was tried to a jury in June 2014. Whatley had challenged the constitutionality of the enhancement as applied to him prior to McPherson's trial; however, in 2014, a resolution in favor of Whatley did not seem likely. At the time of McPherson's trial, Whatley was serving a sentence imposed in 2008 for his conviction for possession of cocaine enhanced to a Class A felony because he possessed the cocaine within 1,000 feet of a youth program center. Our court, on direct appeal, finding that faith-based activities at the Church did not turn the Church

into a youth program center, reversed and remanded the case for entry of a conviction as a Class C felony and sentencing consistent with a Class C felony conviction. *Whatley v. State*, 906 N.E.2d 259, 263 (Ind. Ct. App. May 21, 2009), *trans. granted*. On transfer, our Supreme Court held that the youth program center enhancement was not unconstitutionally vague as applied to Whatley and affirmed his Class A felony conviction. *Whatley v. State,* 928 N.E.2d 202, 206 (Ind. 2010). Whatley's motion for re-trial was dismissed as untimely on June 22, 2010, and our court affirmed the dismissal. *Whatley v. State*, 937 N.E.2d 1238, 1242 (Ind. Ct. App. 2010). The post-conviction court's denial of Whatley's petition for relief was affirmed in *Whatley v. State*, No. 49A04-1110-PC-548, 969 N.E.2d 634 (Ind. Ct. App. June 21, 2012). Whatley's petition for transfer was denied on October 11, 2012. The same month as McPherson's trial in the present case, the federal district court denied Whatley's request for habeas corpus relief. *Whatley v. Zatecky*, 2014 WL 2511585, at *1 (S.D. Ind. June 4, 2014). The enhancement was not found to be unconstitutionally vague until the Seventh Circuit handed down its decision on August 15, 2016, two years after McPherson's trial. A finding of ineffective assistance of counsel requires consideration of only legal precedent available to counsel at the time of counsel's representation of the accused. *Sweeney v. State*, 886 N.E.2d 1, 8 (Ind. Ct. App. 2008), *trans. denied*, *cert. denied*, 555 U.S. 1003 (2008). Given the facts before us, it was not professionally incompetent for trial counsel to forego a motion to dismiss on the basis that the enhancement was unconstitutionally vague.

[19]   Finally, the affidavit in support of McPherson's "warrantless arrest" set forth that McPherson sold crack cocaine to the confidential informant at his home, which was approximately "75 feet from The Boys and Girls Club located at 411 Brady Street, Elkhart, Indiana, which was having a social activity going with multiple children present during the controlled buy, and is also located approximately 200 Feet from a City of Elkhart Public Park known as The Tot Lot . . .." *D.A. Appellant's App. Vol. IV* at 156. McPherson admitted that he knew the Boys and Girls Club was connected to a city park. *D.A. Tr. Vol. II* at 382. As the State notes, "Competent counsel would have been entitled to consider the extent to which a motion to dismiss, even if it could have been persuasive, would have simply resulted in an amended information on equally-enhanced charges," *i.e.*, McPherson was dealing cocaine within 1,000 feet of a city park. *Appellee's Br.* at 24 (citing Ind. Code § 35-38-4-1(b)(3)(B)(ii) (2011)). Based on this information, it would not have been professionally incompetent for McPherson to forego a motion to dismiss on the basis that the enhancement was unconstitutionally vague. Having found that trial counsel's performance was not deficient, we need not reach the prejudice prong. Accordingly, we conclude that the post-conviction court did not err in finding that McPherson did not receive ineffective assistance of trial counsel.

## II. Appellate Counsel

[20]   McPherson also contends that his appellate counsel provided ineffective assistance by failing to raise on direct appeal the issue that the youth program center enhancement was unconstitutionally vague. The standard of review for

a claim of ineffective assistance of appellate counsel is identical to the standard for trial counsel. *Walker v. State*, 988 N.E.2d 1181, 1190 (Ind. Ct. App. 2013) (citing *Lowery v. State,* 640 N.E.2d 1031, 1048 (Ind. 1994), *cert. denied*, 512 U.S. 992 (1995)), *trans. denied*. The petitioner must establish deficient performance by appellate counsel resulting in prejudice. *Id.* Ineffective assistance of appellate counsel claims generally fall into three basic categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well. *Henley v. State,* 881 N.E.2d 639, 644 (Ind. 2008).

[21] "'[T]he decision of what issues to raise is one of the most important strategic decisions to be made by appellate counsel.'" *Walker*, 988 N.E.2d at 1190-91 (citing *Reed v. State,* 856 N.E.2d 1189, 1196 (Ind. 2006)). For countless years, experienced advocates have "emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most a few key issues." *Bieghler v. State,* 690 N.E.2d 188, 194 (Ind. 1997), *cert. denied*, 525 U.S. 1021 (1998) (citation and quotation marks omitted). "Thus, when reviewing these types of claims, we should be particularly deferential to appellate counsel's strategic decision to exclude certain issues in favor of other issues more likely to result in a reversal." *Walker*, 988 N.E.2d at 1191. As a result, "[i]neffective assistance is very rarely found in cases where a defendant asserts that appellate counsel failed to raise an issue on direct appeal." *Reed,* 856 N.E.2d at 1196.

[22] McPherson contends that appellate counsel Bellin was ineffective by not challenging on direct appeal the constitutionality of the youth program center

enhancement. During the post-conviction hearing, Bellin testified that, at the time of McPherson's direct appeal, she was familiar with a case that raised the issue of whether the youth program center enhancement was unconstitutionally vague. *P-CR Tr. Vol. I* at 12. She said that she had examined constitutionality as one of the issues to raise in McPherson's direct appeal; however, in reviewing the trial transcript, she found that trial counsel "did not object or file any sort of motion to dismiss based on the constitutionality of the statute itself." *Id*. at 12-13. Bellin explained that, because trial counsel did not raise the constitutionality issue in a motion to dismiss, the issue was waived for direct appeal. *Id*. at 13.

[23] The State and Bellin are correct, "Generally, the failure to file a proper motion to dismiss raising the Constitutional challenge waives the issue on appeal." *Pittman v. State*, 45 N.E.3d 805, 815 (Ind. Ct. App. 2015) (citing *Payne v. State*, 484 N.E.2d 16, 18 (Ind. 1985); *see also Rhinehardt v. State*, 477 N.E.2d 89, 93 (Ind. 1985) (holding that defendant did not preserve claim that a statute was unconstitutionally vague where he did not raise the issue prior to trial by a timely and proper motion to dismiss)). However, in some cases, our court has "considered challenges to the constitutionality of statutes even where the defendant failed to file a motion to dismiss." *Pittman*, 45 N.E.3d at 815 (citing *Baumgartner v. State*, 891 N.E.2d 1131, 1136 (Ind. Ct. App. 2008). In evaluating whether appellate counsel performed deficiently by not raising the constitutionality issue on appeal, we apply the following test: (1) whether the unraised issue is significant and obvious from the face of the record and (2)

whether the unraised issue is "clearly stronger" than the raised issues. *Henley*, 881 N.E.2d at 645.

[24] Here, Bellin had to decide which issues would be the most successful on direct appeal. After considering the various options, Bellin argued: (1) McPherson's habitual offender enhancement and SVF conviction were an impermissible double enhancement because they were based on the same prior felony; (2) the evidence was insufficient to prove that McPherson dealt cocaine within 1,000 feet of a youth program center; and (3) evidence is insufficient to support his habitual offender enhancement because the State did not prove that he was the one who committed the prior unrelated felonies. *McPherson*, 32 N.E.3d 284, at *1. Bellin succeeded in proving her first issue, and our court remanded the case, ordering the trial court to "run McPherson's sentence for unlawful possession of a firearm by a SVF concurrently, resulting in a new aggregate sentence of seventy-five years." *Id*. Here, Bellin researched the unraised issue of the enhancement's constitutionality, even though that issue was not obvious from the face of the record. Further, because it was uncertain whether the appellate court would entertain the arguably waived issue of constitutionality, the issue of double enhancement was a stronger issue. In fact, Bellin reduced McPherson's sentence by eighteen years. Under these facts and circumstances, the decision of McPherson's appellate counsel to not assert an appellate claim that the enhancement was unconstitutionally vague did not constitute ineffective assistance of appellate counsel. Having found that trial counsel's performance was not deficient, we need not reach the prejudice prong.

Accordingly, we conclude that the post-conviction court did not err in finding that McPherson did not receive ineffective assistance of appellate counsel.

[25] The post-conviction court did not clearly err in rejecting McPherson's claims of ineffective assistance of trial and appellate counsel. Accordingly, we affirm the judgment of the post-conviction court denying McPherson's petition for post-conviction relief.

[26] Affirmed.

[27] Bailey, J., and Pyle, J., concur.