## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 07 2016, 9:19 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Joanna Green
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Theodore T. Schwartz,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

November 7, 2016

Court of Appeals Case No.
02A03-1602-PC-279

Appeal from the
Allen Superior Court

The Honorable
Frances C. Gull, Judge

Trial Court Cause No.
02D06-1109-PC-116

**Kirsch, Judge.**

Theodore T. Schwartz ("Schwartz") appeals the post-conviction court's partial denial of his petition for post-conviction relief. On appeal, he raises the following consolidated, restated, and reordered issues:

> I. Whether Schwartz received ineffective assistance of both trial and appellate counsel; and

> II. Whether Schwartz entered his guilty plea knowingly, intelligently, and voluntarily.

We affirm.[1]

## Facts and Procedural History

The facts supporting Schwartz's convictions as set forth by this court in an unpublished memorandum decision on his direct appeal are as follows:

> On August 19, 2009, Schwartz escaped from the Berne Police Station. He went to J.H.'s house in Allen County where he had previously done restoration work on her barn. Schwartz parked the car he was driving behind J.H.'s barn and broke into her house. When J.H. returned home from work at 6:15 p.m., she unlocked the door, and Schwartz accosted her. Schwartz grabbed J.H. and told her to give him money. J.H. told Schwartz her money was in her car, and he led her outside. J.H. gave Schwartz the money from her purse. When Schwartz tried to get J.H. to go back inside, a struggle ensued. Schwartz struck J.H. in the face, causing her head to go through the glass window. He

---

[1] We commend the post-conviction relief court on its thorough findings, which greatly facilitated our appellate review.

also placed his hands on J.H.'s throat, causing her to momentarily stop breathing.

Schwartz forced J.H. back into the house, retrieved a knife from the kitchen, and forced her upstairs. Schwartz cut off some of J.H.'s clothing with the knife, fondled her, forced her to perform oral sex on him, and performed oral sex on her. Schwartz also forced J.H. to have intercourse with him. At one point, Schwarz put a pillow over J.H.'s head and tied a bandana around her mouth to keep her from screaming. J.H. believed she was going to die. After the sexual assault, Schwartz attempted to tie up J.H. with a belt and the reins from a horse bridle. He also tried to lock her in a closet.

In the meantime, J.H.'s mother, who lived nearby, saw the strange car parked behind the barn and J.H. struggling outside. J.H.'s mother investigated and sought help from neighbors, who called police. When police arrived, Schwartz jumped out of a second story window, stole J.H.'s car, and fled. Schwartz was eventually apprehended in Wells County.

*Schwartz v. State*, No. 02A05-1010-CR-714, 2011 WL 1204832, at *1 (Ind. Ct. App. Mar. 31, 2011) (footnotes omitted), *trans. denied.*

[4] On October 8, 2009, the State charged Schwartz with fifteen felony counts. Schwartz was initially represented by a public defender; however, attorney Stanley Campbell ("Campbell") was later hired to represent Schwartz during his plea proceedings. During an August 20, 2010 guilty plea hearing, the trial court questioned Schwartz concerning his mental health. Schwartz informed the trial court that he was being treated for depression, but was able to understand the proceedings, was able to assist in his defense, was not under the

influence of drugs or alcohol, and was competent to enter a plea. *Guilty Plea Tr.* at 5-6. The trial court also informed Schwartz of the charges against him and the rights he would be giving up by pleading guilty. That same day, Schwartz pleaded guilty to: Count 1, rape as a Class A felony (armed with a deadly weapon); Count 2, criminal deviate conduct as a Class A felony (armed with a deadly weapon); Count 3, criminal deviate conduct as a Class A felony (armed with a deadly weapon); Count 4, burglary as a Class A felony (resulting in bodily injury); Count 5, robbery as a Class A felony (resulting in serious bodily injury); Count 6, criminal confinement as a Class B felony (armed with a deadly weapon); Count 7, battery as a Class C felony (resulting in serious bodily injury); Count 9, strangulation, a Class D felony; and Count 10, auto theft as a Class D felony. Sentencing was left to the trial court's discretion. There was no agreement as to: Count 8, forgery, a Class C felony; Count 11, receiving stolen auto parts as a Class D felony; Count 12, dealing in methamphetamine as a Class B felony; Count 13, possession of methamphetamine as a Class D felony; Count 14, possession of chemical reagents with intent to manufacture methamphetamine as a Class D felony; and Count 15, possession of a controlled substance as a Class D felony. Following a sentencing hearing, Schwartz was committed to the Indiana Department of Correction for an aggregate sentence of 100 years.

[5] In arriving at the sentence, the trial court considered Schwartz's guilty plea to be a mitigating factor and his criminal history to be neither a mitigator nor a significant aggravator. The trial court rejected Schwartz's argument that his

methamphetamine use was a mitigating factor, reasoning that Schwartz had a history of substance abuse, and his claim—that drug use prevented him from knowing what he was doing—lacked credibility. The trial court considered the offenses to be either property-related or sex-related.[2] The trial court sentenced Schwartz to fifty years for the property-related offenses, consisting of fifty years each for the burglary and robbery convictions and one and one-half years for the auto theft conviction, all of which were to be served concurrently. *Sentencing Tr*. at 49.[3] The trial court sentenced Schwartz to fifty years on each of the Class A felony sex-related convictions, ten years on the criminal confinement conviction, and one and one-half years on the strangulation conviction and ordered those sentences to be served concurrent with each other. The trial court entered no sentence for the battery, merging that conviction into the robbery. The trial court justified this sentence on the basis of the nature of the offenses, *i.e.*, the brutality and injury suffered by J.H., and the number of different offenses, and noted that the sentence was "far from a maximum." *Id*. at 50. The trial court then ordered the sentences for the two groups of offenses to be served consecutively and committed Schwartz to the Indiana Department

---

[2] On direct appeal, our court noted, "Although the judgment of conviction groups the offenses slightly differently, both the sentence announced at the sentencing hearing and the judgment of conviction categorize the offenses into two consecutive groups, totaling 100 years." *Schwartz*, 2011 WL 1204832, at *2 n.2.

[3] At the post-conviction relief hearing, the State introduced trial court records, such as transcripts from the guilty plea hearing and sentencing hearing and exhibits from the direct appeal, as Exhibits 1 and 2. Because those documents are separately bound, for clarity, we omit the reference to *PCR Ex*. and cite to them by name.

of Correction for a period of 100 years. At the conclusion of the sentencing hearing, Counts 8, 11, 12, 13, 14, and 15 were dismissed.

[6] Schwartz filed a direct appeal and, again, was represented by Campbell. There, Schwartz alleged that the trial court abused its discretion by relying on facts not supported by the record to establish aggravating circumstances and by finding his addiction was not a mitigating circumstance. Schwartz also argued that his sentence was inappropriate in light of the nature of the offenses and the character of the offender. Our court affirmed Schwartz's 100-year sentence. *Schwartz*, 2011 WL 1204832, at *5.

[7] In November 2014, Schwartz filed "Amendment to Petition for Post-Conviction Relief,"[4] alleging ineffective assistance of trial counsel, ineffective assistance of appellate counsel, and that his guilty plea was not knowing, intelligent, and voluntary. Schwartz alleged that Campbell rendered ineffective assistance as trial counsel when he: (1) failed to ask the State to eliminate alleged "double jeopardy enhancements," such as use of the knife and bodily injury; (2) failed to argue that J.H.'s injuries did not constitute serious bodily injury; (3) failed to argue that Schwartz did not use the knife throughout the four crimes for which it was used as an enhancement; and (4) allowed Schwartz to plead guilty while a competency evaluation was pending in another county. *Id*. at 59-60, 247-48. Schwartz also alleged that Campbell rendered ineffective

---

[4] Schwartz, acting pro se, had initially filed a petition for post-conviction relief in September 2011. The November 14, 2014 filing was an amendment to that petition. *Appellant's Br*. at 6.

assistance as appellate counsel when he: (1) waived the issue of whether J.H.'s injuries constituted serious bodily injury; (2) failed to argue alleged double jeopardy violations; and (3) failed to include, as evidence on appeal the five character letters written in support of Schwartz and offered during sentencing. *Id*. at 61, 248. Finally, Schwartz alleged that his plea was not knowing, intelligent, and voluntary because he did not understand the definition of serious bodily injury or the double jeopardy implications of his plea. *Id*.

[8] At the April 2015 post-conviction relief ("PCR") evidentiary hearing, Schwartz offered the records pertaining to his guilty plea proceedings and his direct appeal, as well as records pertaining to J.H.'s medical examination following the attack. Schwartz also offered the testimony of two witnesses, attorneys Larry Mock ("Mock") and Campbell. Mock, who had represented Schwartz in a Wells County case around the same time as the instant offense, testified that he had filed a request in January 2010 for appointment of medical experts "to determine [Schwartz's] ability to assist in his defense" in that separate action. *Pet'r's PCR Ex*. 3. Campbell knew that a competency evaluation had been requested in Schwartz's Wells County case. Schwartz asserted that his trial counsel was ineffective for failing to determine he was competent prior to allowing him to plead guilty.

[9] Campbell represented Schwartz during his guilty plea proceedings, at sentencing, and on direct appeal. During the PCR hearing, Campbell testified that he did not recall discussing with the prosecutor as part of plea negotiations the issues of double jeopardy or whether the serious bodily injury enhancement

was supported by the evidence. *PCR Tr.* at 15-16. However, Campbell did recall that there had been three different plea agreements offered and that the prosecutor "was pretty entrenched in her position in terms of a plea offer" and did not seem inclined to dismiss charges.[5] *Id.* at 16. The prosecutor wanted to establish a minimum sentence, or floor, of around fifty years for the plea agreement, while Schwartz wanted an agreement with a sentence of thirty to thirty-five years. Accordingly, Campbell's discussion with the prosecutor focused on eliminating or reducing the sentence floor. Schwartz eventually decided to plead guilty to nine counts. Campbell testified that it was his strategy "that if the State wanted to go forward with the remaining [six] Counts they could do that, but ultimately, as we hoped they would, [the State] ended up dismissing those Counts that [Schwartz] hadn't pled guilty to." *Id.* at 17. Regarding his representation of Schwartz on appeal, Campbell explained that he did not include the character letters written in support of Schwartz for the purposes of sentencing because "it wasn't the focus of the attack we were making on appeal." *Id.* at 21.

[10] Following the hearing, the PCR court granted partial relief, concluding that Schwartz correctly asserted that "although the victim suffered bodily injury, it

---

[5] The only change the prosecutor agreed to was a modification of the plea agreement to allow Schwartz to plead guilty to possession of methamphetamine, instead of dealing in methamphetamine, as charged. *PCR Tr.* at 25.

does not appear to have met the statutory definition of serious bodily injury."

*Pet'r's PCR App.* at 210. The PCR court reasoned:

> The evidence submitted by Petitioner at the post-conviction hearing [Findings of Fact, number 13][6] is sufficient to meet his burden of proving, by a preponderance of the evidence, that the victim did not suffer serious bodily injury. This evidence was available to Attorney Campbell in the original proceeding. Petitioner correctly maintains that Attorney Campbell could and should have used this evidence to obtain a reduction of the Robbery charge to a Class C felony and of the Battery charge to a Class A misdemeanor.

*Id.*

[11] The PCR court noted that this evidence was available to Campbell on direct appeal and, had Campbell raised that issue, this court would have granted relief. Accordingly, the PCR court: (1) changed Schwartz's conviction for Count 5 robbery from a Class A to a Class C felony, reducing the sentence from fifty years to eight years; and (2) changed his conviction for Count 7 battery from a Class C felony to a Class A misdemeanor. Although no initial sentence was entered on the battery because it was merged, the PCR court reduced that

---

[6] The post-conviction court's Findings of Fact Number 13, in pertinent part provided:

> At the post-conviction hearing, Petitioner submitted evidence establishing that, when taken to the hospital after the attack, the victim complained of little pain; she had numerous lacerations and abrasions, but no fractures or other injuries.

sentence to one year.[7]  *Id*.  The PCR court denied relief to Schwartz on all other issues.  Schwartz now appeals.

## Discussion and Decision

[12]    Schwartz contends that the PCR court erred in failing to grant him full relief. PCR proceedings do not afford the petitioner an opportunity for a super appeal, but rather, provide the opportunity to raise issues that were unknown or unavailable at the time of the original trial or the direct appeal.  *Ben-Yisrayl v. State*, 738 N.E.2d 253, 258 (Ind. 2000), *cert. denied,* 534 U.S. 1164 (2002); *Wieland v. State*, 848 N.E.2d 679, 681 (Ind. Ct. App. 2006), *trans. denied*, *cert. denied,* 549 U.S. 1038 (2006).  The proceedings do not substitute for a direct appeal and provide only a narrow remedy for subsequent collateral challenges to convictions.  *Ben-Yisrayl*, 738 N.E.2d at 258.  The PCR petitioner bears the burden of proving the grounds by a preponderance of the evidence.  Ind. Post-Conviction Rule 1(5).

[13]    When appealing the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment.  *Hubbell v. State*, 58 N.E.3d 268, 274 (Ind. Ct. App. 2016).  The petitioner must establish that the evidence as a whole unmistakably and unerringly leads to a conclusion contrary to that

---

[7] During sentencing, the State noted that the battery conviction had to be merged into the robbery conviction, stating, "I think the battery is the serious bodily injury which is basically the facial injury when she got shoved through the window which is right in the proximity when he's demanding the money and she doesn't provide him with enough money."  *Sentencing Tr.* at 36-37.  The trial court agreed it was appropriate to merge the offense and entered no sentence for the battery conviction.  *Id*. at 50.

of the PCR court. *Fisher v. State*, 878 N.E.2d 457, 463 (Ind. Ct. App. 2007), *trans. denied*. We will disturb a PCR court's decision as being contrary to law only where the evidence is without conflict and leads to but one conclusion, and the PCR court has reached the opposite conclusion. *Wright v. State*, 881 N.E.2d 1018, 1022 (Ind. Ct. App. 2008), *trans. denied*. The PCR court is the sole judge of the weight of the evidence and the credibility of witnesses. *Lindsey v. State*, 888 N.E.2d 319, 322 (Ind. Ct. App. 2008), *trans. denied*. We accept that court's findings of fact unless clearly erroneous, but we accord no deference to conclusions of law. *Fisher,* 878 N.E.2d at 463.

## I. Ineffective Assistance of Counsel

[14]  Schwartz claims that the PCR court erred by concluding that he received effective assistance of both trial and appellate counsel. To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his or her counsel's performance was deficient—that is, that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed to defendant by the Sixth and Fourteenth Amendments—and that the petitioner was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Black v. State*, 54 N.E.3d 414, 424 (Ind. Ct. App. 2016), *trans. denied*. Counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *Black*, 54 N.E.3d at 424. To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. "A reasonable

probability is a probability sufficient to undermine confidence in the outcome." *Id.* Failure to prove *either* that counsel was defective or that petitioner was prejudiced will cause petitioner's claim to fail. *Id.*

"When considering a claim of ineffective assistance of counsel, a 'strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'"; a defendant must offer strong and convincing evidence to overcome this presumption. *Black*, 54 N.E.3d at 424-25 (quoting *Morgan v. State*, 755 N.E.2d 1070, 1073 (Ind. 2001)). Evidence of isolated poor strategy, inexperience, or bad tactics will not support a claim of ineffective assistance of counsel. *Id.* The two prongs of the *Strickland* test are separate and independent inquiries. *Manzano v. State*, 12 N.E.3d 321, 325 (Ind. Ct. App. 2014), *trans. denied*, *cert. denied*, 135 S. Ct. 2376 (2015). "Thus, if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.* (internal quotation marks omitted).

### A. Trial Counsel

Schwartz argues that trial counsel provided ineffective assistance during plea negotiations, the guilty plea hearing, and the sentencing hearing. Specifically, Schwartz contends that trial counsel should have challenged: (1) that J.H.'s injuries did not meet the statutory definition of serious bodily injury to elevate the crimes of robbery and battery; (2) that enhancing the crimes of rape, criminal deviate conduct, and confinement all on the basis of Schwartz being armed with a deadly weapon (the knife) violated double jeopardy principles;

and (3) the same bodily injury could not be used to elevate the three charges of burglary, robbery, and battery. Further, he contends that trial counsel should have ensured that Schwartz was competent to plead guilty.

[17] Schwartz pleaded guilty to three offenses that were enhanced by bodily injury (burglary) or serious bodily injury (robbery and battery). Schwartz suggests two ways in which trial counsel was ineffective in connection with these charges. First, trial counsel failed to recognize that the evidence did not support a finding that J.H. suffered serious bodily injury, and second, trial counsel failed to argue that the same bodily injury that enhanced the burglary count was also used to enhance both the robbery and the battery counts. The PCR court agreed with Schwartz's first claim, and the State conceded that trial counsel was ineffective for not raising the improper use of the "serious bodily injury" enhancement. *Appellant's App.* at 210. Accordingly, the PCR court removed the serious bodily injury enhancement from the two counts and reduced Schwartz's robbery conviction to a Class C felony and his battery conviction to a Class A misdemeanor. *Id.*

[18] The PCR court, however, did not agree with Schwartz's claim that trial counsel was ineffective for failing to argue that the same bodily injury was improperly used to enhance the charges of burglary, robbery, and battery. We recognize that charges based on the same bodily injury cannot stand, *Owens v. State*, 897 N.E.2d 537, 539 (Ind. Ct. App. 2008); however, we agree with the PCR court that J.H. suffered injuries that were separate in time and location. The evidence supporting Schwartz's Class A burglary conviction was that Schwartz admitted

he broke into J.H.'s dwelling, with intent to commit a felony therein, and the felony resulted in bodily injury—bruises to J.H.'s shoulder and bruises and pain to her back. *Sentencing Tr*. at 33. Schwartz's conviction for Class A misdemeanor battery was supported by his admission that he knowingly or intentionally touched J.H. in a rude insolent or angry manner, resulting in bodily injury—a facial injury caused when Schwartz shoved J.H.'s head into a glass window. *Id*. at 34. Finally, Schwartz's conviction for Class C robbery required no injury. That conviction was supported by Schwartz's admission that he knowingly or intentionally took money from J.H. by using or threatening the use of force or by putting J.H. in fear while he forcibly took J.H. to her car to retrieve her purse. These three convictions did not rely on an improper bodily injury enhancement. Trial counsel was not ineffective for failing to challenge the bodily injury enhancements.

[19] Schwartz next argues that trial counsel was ineffective for not questioning the use of the enhancement "armed with a deadly weapon [, the knife,]" to elevate the seriousness of the charges of rape, criminal confinement, and two counts of criminal deviant conduct. During the PCR hearing, Schwartz maintained that trial counsel was ineffective for failing to argue that the knife was not used repeatedly and, therefore, should not have enhanced four separate counts. *PCR Tr*. at 15, 16 & 20. As support for his position, Schwartz pointed to the State's comment, during sentencing, that Schwartz "used the knife to cut off [J.H.]'s clothes in order to facilitate his sexual acts." *Appellant's Br*. at 11 (citing *Sentencing Tr*. at 35). The State countered, offering J.H.'s sentencing testimony

that "the knife always was present," and J.H. "felt that he could do anything at any time." *Sentencing Tr*. at 25.

[20] The PCR court agreed with the State, reasoning:

> The victim's statement that the knife "was always present," and, along with Petitioner's rage, "ruled [her] behavior" [Findings of Fact, number 10], supports a rational inference that Petitioner *did use the knife* in the course of forcing the victim to submit to all the charged sex offenses and the confinement. In this regard, Petitioner's case is comparable to *Marshall v. State*, 832 N.E.2d 615 (Ind. Ct. App. 2008), *trans. denied*. In [that] case, Marshall held a knife to the 13 year old victim's throat once, and committed three different acts of molestation. Marshall appealed the convictions on three counts of Class A felony child molesting, asserting all three should not have been elevated to Class A felonies because he did not use the knife repeatedly. The Court of Appeals succinctly disagreed: "Although Marshall only held his knife to D.N's throat once, it is not as if Marshall needed to remind D.N. of the knife's presence as he used the threat of the knife to facilitate each independent molestation." It is clear from the victim's statement that Petitioner did not need to remind [J.H.] of the knife's presence as he used the threat of the knife to facilitate each sex offense and the confinement. Petitioner has not shown a reasonable probability that Attorney Campbell could have succeeded in obtaining a reduction of the class of any of the Class A felony sex offenses or the Class B confinement offense, by any means. Attorney Campbell cannot be found ineffective for failing to do so.

*Pet'r's PCR App*. at 210-11 (emphasis added) (internal citations omitted). Schwartz has not proved that trial counsel was ineffective for failing to raise a claim of improper enhancement based on the use of the knife.[8]

[21] Moreover, Schwartz has not proven that he was prejudiced by trial counsel's actions during plea negotiations, guilty plea hearing, or sentencing. To show prejudice resulting from deficient performance in *plea negotiations*, a petitioner for post-conviction relief must show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a lesser charge or a sentence of less prison time. *Missouri v. Frye*, 132 S. Ct. 1399, 1409 (2012). Schwartz argues that he was prejudiced by trial counsel's failure to raise the above issues during plea negotiations because, if trial counsel had effectively attacked these improper enhancements, the severity of the crimes would have been reduced, and the State would have been negotiating from a weaker and certainly different sentencing position. *Appellant's Br*. at 11.

[22] Here, Schwartz cannot show he was prejudiced by his trial counsel's conduct during plea negotiations, Schwartz cannot establish prejudice because there is no evidence that the end result of the criminal process would have been more

---

[8] *See also Sistrunk v. State*, 36 N.E.3d 1051 (Ind. 2015). There, acting sua sponte, our Supreme Court, reversing this court, held that it was not improper to enhance both of defendant's convictions for robbery and criminal confinement from Class C to Class B felonies on the basis of the same evidence, namely, defendant's act of being armed with a deadly weapon. *Id*. at 1054. Therefore, we agree with the State that, even if Schwartz could prove that he did not repeatedly threaten J.H. with the knife, "[M]ultiple enhancements would still be proper if the victim complied with his subsequent demands due to the original threat by a deadly weapon." *Appellee's Br*. at 21.

favorable by reason of a lesser charge or a sentence of less than 100 years. First, the trial court imposed a 100-year sentence, which was ten years more than the State had requested. Second, the PCR court was convinced that the prosecutor was "pretty entrenched" and refused to drop any charges, and Campbell did not make much progress in his attempt to get the State to reduce Schwartz's charges. *Pet'r's PCR App*. at 207. Third, even though the PCR court reduced the severity and sentence for Schwartz's robbery and battery convictions, the PCR court found no reason to reduce Schwartz's sentence of 100 years; Schwartz remained guilty of Class A felony rape, two counts of Class A felony criminal deviate conduct, and one count of Class A felony burglary, among other crimes. There is no evidence that trial counsel prevented him from getting a better plea offer or a lesser sentence. No prejudice was shown.

[23] To show prejudice in the *guilty plea* context, Schwartz had to prove that but for trial counsel's deficient performance, he would not have pleaded guilty and would likely have succeeded at trial. *Manzano,* 12 N.E.3d at 326. Here, the case against Schwartz was very strong. There was no question that Schwartz was the man who committed the crimes; he had worked for J.H., so his identity was known. Further, Schwartz knew the severity of the crimes and the injuries he had caused. Prior to entering his plea, the trial court informed Schwartz that his five Class A felonies carried a sentencing range of twenty to fifty years with a thirty-year advisory; his one Class B felony carried a range of six to twenty years with an advisory of ten; his one Class C felony carried a range of two to eight years with an advisory of four years; and his two Class D felonies carried

a range of six months to three years with an advisory of one and one-half years. *Guilty Plea Tr*. at 12-13. The trial court also informed Schwartz, "Indiana law provides for aggravating circumstances that may be considered by the Court at sentencing and that in considering such aggravating circumstances the Court could impose consecutive terms of imprisonment for multiple offenses." *Id.* at 14. Schwartz pleaded guilty to nine of the fifteen counts without a plea agreement. The remaining six counts were dismissed. Even if we ignore Counts 5 and 7 and consider only the remaining convictions, Schwartz was guilty of four Class A felonies, one Class B felony, and two Class D felonies. The advisory sentence for each of those crimes, served consecutively, constituted an aggregate sentence of 133 years. There is no evidence that but for trial counsel's claimed deficient performance, Schwartz would not have pleaded guilty and would likely have succeeded at trial. *Manzano*, 12 N.E.3d at 326. Additionally, there is no evidence that Schwartz could have negotiated a better plea, no prejudice was proven.

[24] To prove prejudice in the *sentencing* context, Schwartz had to prove that counsel's deficient performance deprived him of a substantive or procedural right. Schwartz claims that trial counsel's ineffective representation resulted in a sentence of 100 years. Schwartz's arguments regarding prejudice from ineffective assistance of counsel for sentencing are essentially the same as the issues already addressed with regard to assistance of counsel during plea negotiations and the guilty plea hearing. The PCR court found that Schwartz had "not shown any prejudice to his defense resulted in regard to the aggregate

sentence. He is entitled to no reduction in the aggregate sentence." *Pet'r's PCR App*. at 213. We agree with the PCR court that Schwartz was not prejudiced by trial counsel's representation during sentencing. First, Schwartz received relief in the PCR court with regard to his claims regarding serious bodily injury enhancements. *Pet'r's PCR App*. at 210, 213, 222. Second, he was not entitled to any relief on his claims regarding the deadly weapon enhancements. Third, there is no reasonable probability that Schwartz would have received a lesser sentence if he had presented sentencing arguments regarding the bodily injury enhancement. Schwartz's 100-year sentence was supported by his Class A felony convictions for rape and burglary and his convictions for criminal deviate conduct, robbery, criminal confinement, strangulation, and auto theft.

[25] A criminal defendant's due process rights to a fair trial are not adequately protected if he is not legally *competent* to stand trial. *Drope v. Missouri*, 420 U.S. 162 (1975). Schwartz argues that Campbell provided deficient representation by allowing Schwartz to plead guilty without waiting for the Wells County evaluations to be complete. At the PCR hearing, Mock, who had represented Schwartz in a Wells County case around the same time as the instant offenses, testified that, upon being appointed to the case, Schwartz "would talk about demons being in the room with us and things of that nature," and Mock was unable to communicate with Schwartz about the case. *PCR Tr*. at 7-8. As such, Mock filed a request in January 2010 for appointment of medical experts "to determine [Schwartz's] ability to assist in his defense." *Pet'r's PCR Ex*. 3. Two doctors were appointed to evaluate Schwartz's competency; however, Mock

withdrew his evaluation request in October 2010 because, by then, Schwartz could help with his case and no longer appeared to be incompetent. During the PCR hearing, Campbell testified that he became aware that competency evaluations had been sought in Wells County, but he did not remember whether he spoke to Mock to inquire about Schwartz's competence. *PCR Tr.* at 13-14. Campbell thought Schwartz's use of "meth" had skewed his thought processes, but Campbell "never had the impression that [Schwartz] was incompetent or did not understand what they were talking about." *Pet'r's PCR App.* at 208. Nothing Campbell observed led him to conclude that there was any need to delay the guilty plea proceedings for a competency evaluation.

[26] The PCR court found that Campbell was not ineffective for failing to await the outcome of a competency hearing in another case, in another county, which was ultimately withdrawn. We agree. Observations of a defendant's demeanor in court provide an adequate basis for finding that no competency hearing is needed. *Brown v. State*, 516 N.E.2d 29, 30 (Ind. 1987). During the guilty plea hearing, the trial court questioned Schwartz regarding his mental health and learned that Schwartz was being treated for depression, was taking medication, and felt competent to participate in the proceedings. *Guilty Plea Tr.* at 5-6. Campbell concurred with Schwartz's assessment and agreed that Schwartz understood the situation he was in, was able to assist in his defense, and was competent to enter a plea. *Id.* at 6. The trial court was satisfied regarding Schwartz's competency and accepted his plea. Schwartz may have been experiencing mental health issues in 2010; however, he has presented no

evidence that they were of the type that would have rendered him incompetent to plead guilty. Schwartz has not shown either ineffective assistance or prejudice by his counsel's failure to challenge his competency.

### B. Appellate Counsel

Schwartz next contends that the PCR court erred in finding that Campbell provided effective assistance of appellate counsel. Specifically, he argues that appellate counsel rendered ineffective assistance on appeal by: (1) waiving the issue of whether J.H.'s injuries should have been used to aggravate the sentence; (2) failing to argue alleged double jeopardy violations; and (3) failing to include in the record on appeal the five letters supporting Schwartz's character.

The standard of review for a claim of ineffective assistance of appellate counsel is identical to the standard for trial counsel. *Lowery v. State*, 640 N.E.2d 1031, 1048 (Ind. 1994), *cert. denied*, 516 U.S. 992 (1995). The petitioner must establish deficient performance by appellate counsel resulting in prejudice. *Id*. "Ineffective assistance of appellate counsel claims generally fall into three basic categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well." *Henley v. State*, 881 N.E.2d 639, 644 (Ind. 2008). "[T]he decision of what issues to raise is one of the most important strategic decisions to be made by appellate counsel." *Reed v. State*, 856 N.E.2d 1189, 1196 (Ind. 2006). In evaluating whether appellate counsel performed deficiently by failing to raise an issue on appeal, we apply the following test: (1) whether the unraised issue is significant and obvious from the face of the record; and (2)

whether the unraised issue is "clearly stronger" than the raised issues. *Henley*, 881 N.E.2d at 645. For countless years, experienced advocates have "emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most a few key issues." *Bieghler v. State*, 690 N.E.2d 188, 194 (Ind. 1997), *cert. denied*, 525 U.S. 1021 (1998) (citation and quotation marks omitted). Thus, when reviewing these types of claims, we should be particularly deferential to appellate counsel's strategic decision to exclude certain issues in favor of other issues more likely to result in a reversal. *Id*. As a result, "[i]neffective assistance is very rarely found in cases where a defendant asserts that appellate counsel failed to raise an issue on direct appeal." *Reed*, 856 N.E.2d at 1196.

Schwartz contends the PCR court erred in finding appellate counsel was not ineffective for failing to admit five reference letters on direct appeal. Schwartz argues, if this court on direct appeal had understood Schwartz's character outside his addiction to drugs, it may have found the 100-year sentence was inappropriate. The letters pertained to Schwartz's character when he was not on drugs, an issue that was not in dispute. The PCR court found questionable the relevance of Schwartz's character when he was not on drugs "in view of the fact that he was on drugs for a significant period of time, *i.e.*, some years before the offenses." *Pet'r's PCR App*. at 219. The PCR court denied Schwartz's claim that appellate counsel was ineffective, finding unpersuasive Schwartz's reliance on *Long v. State*, 865 N.E.2d 1031 (Ind. Ct. App. 2007), *trans. denied*. The PCR court cited to the following reasons why Long's character, as set forth in the

letters, was relevant while Schwartz's was not. The court in *Long* found: (1) Long's character did not justify the maximum sentence, but Schwartz was not given the maximum sentence; (2) Long's act of voluntary manslaughter was clearly out of character because he had no criminal history, while Schwartz had a criminal history; (3) Long was not on drugs, but Schwartz was on drugs; and (4) Long's twenty-three character letters were not cumulative, while Schwartz's five letters were. *Pet'r's PCR App.* at 219-21. Schwartz argues that these four factors are not pertinent. However, his arguments are merely a request that we reweigh the evidence, which we will not do. *Sweet v. State*, 10 N.E.3d 10, 15 (Ind. Ct. App. 2014). Appellate counsel was not ineffective for failing to offer the character letters on direct appeal.

[29] Schwartz's remaining ineffective assistance of appellate counsel claims essentially echo those asserted against his trial counsel. For the reasons previously explained herein, we find that, like trial counsel, appellate counsel did not provide ineffective assistance to Schwartz, and Schwartz was in no way prejudiced by appellate counsel's representation.

## II. Voluntariness of Guilty Plea

[30] Schwartz also claims that his guilty plea was not knowingly, intelligently, and voluntarily entered because he did not understand that he was pleading guilty to an enhancement ("serious bodily injury") that could not be proven. Schwartz characterizes this issue not as one of ineffective assistance of counsel, but instead, as a question of voluntariness—the distinction being, "voluntariness 'focuses on whether the defendant knowingly and freely entered the plea, in

contrast to ineffective assistance, which turns on the performance of counsel and resulting prejudice.'" *Black*, 54 N.E.3d at 424. In general, a defendant may not challenge a guilty plea through direct appeal. *St. Clair v. State*, 901 N.E.2d 490, 492 (Ind. 2009). "The path to challenging the plea and conviction runs by way of a petition for post-conviction relief." *Id.*

[31] "The long-standing test for the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Diaz v. State*, 934 N.E.2d 1089, 1094 (Ind. 2010) (quoting *N. Carolina v. Alford*, 400 U.S. 25, 31 (1970)). In furtherance of this objective, the Indiana Code provides that the court accepting the guilty plea must determine that the defendant: (1) understands the nature of the charges; (2) has been informed that a guilty plea effectively waives several constitutional rights, including trial by jury, confrontation and cross-examining of witnesses, compulsory process, and proof of guilt beyond a reasonable doubt without self-incrimination; and (3) has been informed of the maximum and minimum sentences for the crime charged. Ind. Code § 35-35-1-2.; *Diaz*, 934 N.E.2d at 1094.

[32] In assessing the voluntariness of the plea, this court reviews all the evidence before the PCR court, "including testimony given at the post-conviction trial, the transcript of the petitioner's original sentencing, and any plea agreements or other exhibits which are part of the record." *Black*, 54 N.E.3d at 424 (citation omitted). Generally speaking, if a trial court undertakes these steps, a PCR petitioner will have a difficult time overturning his guilty plea on collateral

attack. *Richardson v. State*, 800 N.E.2d 639, 643 (Ind. Ct. App. 2003) (citation omitted).

[33] Schwartz pleaded guilty to nine felony counts, including Count 5 robbery and Count 7 battery, both of which had been elevated by the State's allegation that they resulted in serious bodily injury to J.H. "Serious bodily injury" is defined in Indiana Code section 35-31.5-2-292.[9] Schwartz maintains that his trial counsel did not inform him of the meaning of that term, and therefore, he did not know that the element of serious bodily injury could not be proven under Counts 5 and 7. Schwartz argues, that a guilty plea "cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." *Appellant's Br*. at 19 (quoting *Henderson v. Morgan*, 426 U.S. 637, 641 (1976)). As such, Schwartz claims that his pleas of guilty to robbery and battery were not knowing, voluntary, and intelligent.

[34] Evidence that a person was "coerced or misled into pleading guilty by the judge, prosecutor or defense counsel will present a colorable claim that their plea was not voluntary." *Black*, 54 N.E.3d at 424 (citing *State v. Moore*, 678 N.E.2d 1258, 1265 (Ind. 1997), *cert. denied*, 523 U.S. 1079 (1998)). Here, we find no such colorable claim. Trial counsel testified that he could not recall

---

[9] Indiana Code section 35-31.5-2-292 provides, "Serious bodily injury" means bodily injury that creates a substantial risk of death or that causes: (1) serious permanent disfigurement; (2) unconsciousness; (3) extreme pain; (4) permanent or protracted loss or impairment of the function of a bodily member or organ; or (5) loss of a fetus.

whether he had explained to Schwartz the definition of serious bodily injury. *PCR Tr.* at 17. Even so, Schwartz did not testify at the PCR evidentiary hearing that he was coerced or misled into pleading guilty.

[35] Here, the evidence against Schwartz was overwhelming. There was no question that Schwartz was the man who committed the crimes; he had worked for J.H. so his identity was known. Further, Schwartz also knew the severity of the injuries he had caused. Schwartz pleaded guilty to nine of fifteen charged felonies without a plea agreement, and the remaining six counts were dismissed. Prior to accepting Schwartz's plea, the trial court inquired into Schwartz's mental health and competency to make the plea. *Guilty Plea Tr.* at 5-6. The court also confirmed that Schwartz understood the nature of the charges and that a guilty plea effectively waived certain constitutional rights. *Id*. at 6-12. Finally, the trial court informed Schwartz that: his five Class A felonies carried a sentencing range of twenty to fifty years with a thirty-year advisory; his one Class B felony carried a range of six to twenty years with an advisory of ten; his one Class C felony carried a range of two to eight years with an advisory of four years; and his two Class D felonies carried a range of six months to three years with an advisory of one and one-half years. *Id*. at 12-13. Schwartz contends that his lack of knowledge about the meaning of "serious bodily injury" meant his plea was not voluntarily or intelligently made. We disagree, finding that Schwartz's "plea represents a voluntary and intelligent choice among the alternative courses of action open to [him]." *See Alford,* 400 U.S. at 37-38 (when plea is viewed in light of evidence, which substantially

negated defendant's claim of innocence and provided means by which judge could test whether plea was intelligently entered, plea's validity cannot be seriously questioned).

[36] Affirmed.

May, J., and Crone, J., concur.